## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,    )<br>   )<br>         Plaintiff,    )<br>    v.      )<br>   )<br>HARLEY-DAVIDSON, INC.,    )<br>HARLEY-DAVIDSON MOTOR COMPANY  )<br>GROUP, LLC,    )<br>HARLEY-DAVIDSON MOTOR COMPANY,  )<br>INC., and    )<br>HARLEY-DAVIDSON MOTOR COMPANY  )<br>OPERATIONS, INC.    )<br>   )<br>         Defendants.   )<br>   ) | Civil Action No.  16-1687 |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency (EPA), files this complaint and alleges as follows:

## NATURE OF ACTION

1.  This is a civil action brought pursuant to sections 203, 204, and 205 of the Clean Air Act (CAA), 42 U.S.C. §§ 7522, 7523, and 7524, for injunctive relief and the assessment of civil penalties against Harley-Davidson, Inc., Harley-Davidson Motor Company Group, LLC, Harley-Davidson Motor Company, Inc., and Harley-Davidson Motor Company Operations, Inc. (Defendants) for violations of the CAA and the on-highway motorcycle regulations, 40 C.F.R. Parts 85 and 86.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter of this action pursuant to sections 204 and 205 of the CAA, 42 U.S.C. §§ 7523 and 7524, and 28 U.S.C. §§ 1331, 1345, and 1355.

3. Venue is proper in this jurisdiction pursuant to section 205(b) of the CAA, 42 U.S.C. § 7524(b), because the Administrator has her principal place of business here.

**DEFENDANTS**

4. Defendant Harley-Davidson, Inc. is incorporated under the laws of the State of Wisconsin and is headquartered in Milwaukee, WI. Harley-Davidson, Inc. is a "person" within the meaning of section 302(e) of the CAA, 42 U.S.C. § 7602(e), and a "manufacturer" of "new motor vehicles" within the meaning of section 216(1)-(2) of the CAA, 42 U.S.C. § 7550(1)-(2). Harley-Davidson, Inc. is the parent company of Defendant Harley-Davidson Motor Company Group, LLC.

5. Defendant Harley-Davidson Motor Company Group, LLC is incorporated under the laws of the State of Wisconsin and is headquartered in Milwaukee, Wisconsin. Harley-Davidson Motor Company Group, LLC is a "person" within the meaning of section 302(e) of the CAA, 42 U.S.C. § 7602(e), and a "manufacturer" of "new motor vehicles" within the meaning of section 216(1)-(2) of the CAA, 42 U.S.C. § 7550(1)-(2). Defendant Harley-Davidson Motor Company Group, LLC is the parent company of Harley-Davidson Motor Company, Inc. and Harley-Davidson Motor Company Operations, Inc.

6. Defendant Harley-Davidson Motor Company, Inc. is incorporated under the laws of the State of Wisconsin and is headquartered in Milwaukee, WI. Defendant Harley-Davidson Motor Company, Inc. is a subsidiary of Harley-Davidson Motor Company Group, LLC, and does

business as Harley-Davidson Motor Company.  Harley-Davidson Motor Company, Inc. is a "person" within the meaning of section 302(e) of the CAA, 42 U.S.C. § 7602(e), and a "manufacturer" of "new motor vehicles" within the meaning of section 216(1)-(2) of the CAA, 42 U.S.C. § 7550(1)-(2).

7. Defendant Harley-Davidson Motor Company Operations, Inc. is incorporated under the laws of the State of Wisconsin and is headquartered in Milwaukee, WI.  Defendant Harley-Davidson Motor Company Operations, Inc. is a subsidiary of Harley-Davidson Motor Company Group, LLC, and does business as Harley-Davidson Motor Company.  Harley-Davidson Motor Company Operations, Inc. is a "person" within the meaning of section 302(e) of the CAA, 42 U.S.C. § 7602(e), and a "manufacturer" of "new motor vehicles" within the meaning of section 216(1)-(2) of the CAA, 42 U.S.C. § 7550(1)-(2).

8. At all times relevant to this action, Defendants were engaged in the business of manufacturing and/or selling new motorcycles and motorcycle aftermarket tuners.

## STATUTORY AND REGULATORY BACKGROUND

9. This action arises under Title II of the CAA, as amended, 42 U.S.C. §§ 7521 - 7590, and the regulations promulgated thereunder relating to the control of emissions from mobile sources of air pollution.

10. Section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), prohibits manufacturers of new motor vehicles or motor vehicle engines from selling, offering for sale, or introducing or delivering for introduction into commerce any new motor vehicle or motor vehicle engine unless the vehicle/engine is covered by a certificate of conformity (COC) issued by EPA under regulations prescribed by the CAA governing engine emission standards.

11. To obtain a COC, a manufacturer must submit an application to EPA for each model year and for each engine family that it intends to manufacture or sell in the United States. 42 U.S.C. § 7525(a)(1); 40 C.F.R. §§ 86.406-78(c)(1) and 86.437-78(a)(1) and (2)(ii-iii).

12. A COC issued for a particular engine family states that it covers the models listed in the application and on the face of the COC.  It also states that it covers only those vehicles which conform, in all material respects, to the design specifications that applied to those vehicles described in the application for the COC.

13. Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), prohibits any person from manufacturing, selling, offering for sale, or installing, any part or component (referred to herein generally as a "defeat device") intended for use with, or as part of, any vehicle/engine where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a vehicle/engine in compliance with regulations under Title II of the CAA, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.

14. Section 203(a)(3)(A) of the CAA, 42 U.S.C. § 7522(a)(3)(A), prohibits any person from removing or rendering inoperative any device or element of design installed on a motor vehicle in compliance with the regulations promulgated under Title II of the Act prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser.

15. It is also a violation to cause any of the acts set forth in Section 203(a).  42 U.S.C. § 7522(a).

**GENERAL ALLEGATIONS**

16. Defendants sold, offered for sale, introduced or delivered for introduction into commerce, and/or caused any of the forgoing with respect to, 12,682 new motorcycles that were not covered by a COC issued by EPA (Subject Motorcycles).

17. On each of the Subject Motorcycles, Defendants affixed an EPA label that identified the motorcycle as being covered under a certified engine family, but Defendants failed to identify the motorcycle's model name in the application for certification of such engine family. Further, the model names of the 12,682 motorcycles were not listed on the face of the issued COC for the applicable engine family.

18. The Subject Motorcycles are further described in Table 1 below:

Table 1: Uncertified Motorcycles (Subject Motorcycles)

| Model Year | Model | Number of Motorcycles Sold | Engine Family Described on the EPA label |
| --- | --- | --- | --- |
| 2006 | FLHTPI CHP | 34 | 6HDXC1.68AEC |
| 2006 | XL 1200L | 5 | 6HDXC01.2CEA |
| 2007 | XL 1200N | 6,755 | 7HDXC01.2CEA |
| 2008 | FXDF | 5,888 | 8HDXC1.58AEC |

19. From 2008 through 2015, Defendants manufactured, sold, offered to sell, installed, or caused any of the forgoing (hereafter, "manufactured and/or sold") 14,968 Screamin' Eagle electronic fuel injection (EFI) Race Tuners (Part No. 32107-01L) and at least 324,424 Screamin' Eagle Pro Super Tuners (Part No. 32109-08). Defendants continue to manufacture and/or sell the Screamin' Eagle Pro Super Tuners. (Collectively, these Screamin' Eagle Tuners are referred to as the "Subject Tuners.")

20. Defendants designed the Subject Tuners for, and intended them to be used with, on-highway motorcycles that are motor vehicles within the meaning of CAA section 216(2), 42 U.S.C. § 7550(2).

21. Defendants manufactured and/or sold and advertised the Subject Tuners for use on Harley-Davidson's certified on-highway motorcycle models. Part No. 32107-01L was manufactured and/or sold and advertised for use on the 2002-2008 EFI Touring and the 2001-2008 EFI VRSC, XL, Dyna, and Softail models. Part No. 32109-08 is manufactured and/or sold and advertised for use on Harley Davidson models, including, *inter alia,* the 2001 and later EFI VRSC, XL, XR, Dyna, Softail and the 2002 and later EFI Touring and Trike models.

22. Defendants' motorcycles are equipped with a computer that controls the timing of the spark and the timing and quantity of fuel delivered to the engine. The computer is often called an electronic control module or an engine control module (both ECM). Defendants call this computer the "electronic control unit" (ECU). Defendants' applications for certification designate the ECU unit as an emissions control component. The ECU collects input signals from multiple motorcycle sensors, *e.g*., revolutions per minute, engine temperature, air temperature, throttle position, manifold pressure, and crankshaft position. The programing of the ECU in response to the input of sensors is often referred to as a "map." Based on the input signals and the fuel map(s) and spark timing map(s) programed into the ECU, the ECU sends output signals to adjust the timing of the ignition spark and the amount and timing of fuel injected. Spark timing and fuel delivery are critical parameters affecting both the performance of the motorcycle, as well as the quantity of emissions it produces. These parameters need to be adjusted depending on many factors, including engine speed and load, ambient temperature and pressure, exhaust

system oxygen levels, and other conditions measured by the sensors and communicated to the ECU on a continuous basis while the engine is operating.

23. In order to obtain a COC, motorcycle manufacturers must develop maps for the air-fuel ratio and for spark timing that balance engine performance against the creation of pollutant emissions, and that are calibrated such that the motorcycles comply with emissions standards.

24. A principal effect of the Subject Tuners (including the associated software logic and/or calibrations affecting the calibrations installed in the ECU) is to bypass, defeat, or render inoperative devices or elements of design, *e.g.*, the certified fuel map(s) and spark timing map(s) in the ECU, that were installed on or in the motorcycles in compliance with applicable regulations.

25. Installation of the Subject Tuners increases the power and performance of the motorcycles. Installation of the Subject Tuners also allows owners to further increase power and performance by removing certain certified parts or adding other aftermarket parts.

26. Defendants knew or should have known that the Subject Tuners are and were being used to bypass, defeat or render inoperative a device or element of design installed on the motorcycles in compliance with applicable regulations.

27. Defendants sell and ship the Subject Tuners to Harley-Davidson dealers for resale and/or installation. Harley-Davidson dealers install the Subject Tuners on motorcycles before and/or after the motorcycles have been sold and delivered to the ultimate purchaser. Harley-Davidson dealers also sell the Subject Tuners to individual motorcycle owners or other persons for them to install on motorcycles. Defendants have caused persons to install the Subject Tuners on motorcycles, and thus to remove or render inoperative certain devices or elements of design,

*i.e.*, the certified fuel maps and spark timing maps in the ECUs, that were installed on or in the motorcycles in compliance with applicable regulations. Defendants have caused persons to install such Subject Tuners both prior to and after the motorcycles' sale and delivery to the ultimate purchasers. As to Subject Tuners that were installed after the sale and delivery of the motorcycle to the ultimate purchaser, Defendants knew that the installation of the Subject Tuners removed or rendered inoperative devices or elements of design that were installed on or in the motorcycles in compliance with regulations under Title II of the CAA, and Defendants caused the knowing removal or rendering inoperative of such devices or elements of design.

28. The use of the Subject Tuners has caused increased emissions of hydrocarbons (HC) plus oxides of nitrogen (NOx).

### FIRST CLAIM FOR RELIEF
(Section 203(a)(1): Selling New Motorcycles
Not Covered by Certificates of Conformity)

29. The United States re-alleges paragraphs 1 through 28 above as if fully set forth herein.

30. Defendants sold, offered for sale, introduced or delivered for introduction into commerce, and/or caused any of the forgoing with respect to 12,682 new motorcycles that were not covered by COCs because the motorcycles were neither identified for coverage in any application for a COC nor listed on the face of any COC.

31. Each sale, offering for sale, introduction or delivery for introduction into U.S. commerce, and/or the causing thereof, by Defendants of a motorcycle not covered by a COC is a separate violation of section 203(a)(1), 42 U.S.C. § 7522(a)(1).

32. Pursuant to sections 204(a) and 205(a) of the CAA, 42 U.S.C. §§ 7523 and 7524, Defendants are liable for injunctive relief and civil penalties of up to $32,500 per vehicle for

each violation occurring before January 13, 2009, and injunctive relief and civil penalties up to $37,500 per vehicle for each violation occurring on or after January 13, 2009. 40 C.F.R. § 19.4; 81 Fed. Reg. 43,092, 43,095 (July 1, 2016).

## SECOND CLAIM FOR RELIEF
(Section 203(a)(3)(B): Defeat Devices)

33. The United States re-alleges paragraphs 1 through 28 above as if fully set forth herein.

34. Defendants manufactured, sold, offered to sell, installed, or caused any of the forgoing with respect to, parts or components (specifically, the Subject Tuners) intended for use with or as part of, motorcycles or motorcycle engines, where the principal effect of the part or component is to bypass, defeat, or render inoperative a device or element of design installed on or in motorcycles or motorcycle engines in compliance with regulations under Title II of the CAA, and Defendants knew or should have known that such part or component was being sold, offered for sale, or installed for such use or put to such use.

35. From 2008 to 2015, Defendants sold at least 339,392 Subject Tuners, which constitute "defeat devices," and continue to sell the Subject Tuners.

36. Each Subject Tuner manufactured, sold, offered for sale, or installed by Defendants on or in a motorcycle or motorcycle engine (or the causing thereof) is a separate violation of section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B).

37. Pursuant to sections 204(a) and 205(a) of the CAA, 42 U.S.C. §§ 7523 and 7524, Defendants are liable for injunctive relief and civil penalties of up to $2,750 for each violation of section 203(a)(3)(B) occurring before January 13, 2009, injunctive relief and civil penalties of up to $3,750 for each violation of section 203(a)(3)(B) occurring on or after January 13, 2009, and injunctive relief and civil penalties of up to $4,454 for each violation of section 203(a)(3)(B)

occurring on or after November 2, 2015. 40 C.F.R. § 19.4; 81 Fed. Reg. 43,092, 43,095 (July 1, 2016).

## THIRD CLAIM FOR RELIEF
(Section 203(a)(3)(A): Tampering)

38. The United States re-alleges paragraphs 1 through 28 above as if fully set forth herein.

39. The Subject Tuners have the effect of removing or rendering inoperative devices or elements of design installed on or in motorcycles or motorcycle engines in compliance with the regulations promulgated under Title II of the Act.

40. Defendants caused persons (including, but not limited to, Harley Davidson dealers and motorcycle owners) to install the Subject Tuners on motorcycles or motorcycle engines.

41. From 2008 to 2015, Defendants caused the installation of at least 339,392 Subject Tuners, and Defendants continue to sell and cause the installation of the Subject Tuners.

42. As to Subject Tuners that were installed after the sale and delivery of the motorcycle to the ultimate purchaser, Defendants knew that the installation of the Subject Tuners removed or rendered inoperative devices or elements of design that were installed on or in the motorcycles or motorcycle engines in compliance with regulations under Title II of the CAA, and Defendants caused the knowing removal or rendering inoperative of such devices or elements of design.

43. Defendants violated Section 203(a)(3)(A) of the Act, 42 U.S.C. § 7522(a)(3)(A), by causing the installation of the Subject Tuners on motorcycles, thereby removing or rendering inoperative elements of the emissions control system installed in a new motor vehicle in compliance with regulations promulgated under Title II of the Act.

44. Each motorcycle equipped with a Super Tuner represents a separate violation by Defendants of section 203(a)(3)(A) of the CAA, 42 U.S.C. § 7522(a)(3)(A).

45. Pursuant to sections 204(a) and 205(a) of the CAA, 42 U.S.C. §§ 7523 and 7524, Defendants are liable for injunctive relief and civil penalties of up to $27,500 for each violation of section 203(a)(3)(A) occurring before January 13, 2009, injunctive relief and civil penalties of up to $37,500 for each violation of section 203(a)(3)(A) occurring on or after January 13, 2009, and injunctive relief and civil penalties of up to $44,539 for each violation of section 203(a)(3)(A) occurring on or after November 2, 2015.  40 C.F.R. § 19.4; 81 Fed. Reg. 43,092, 43,095 (July 1, 2016).

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully demands judgment:

a. Permanently enjoining Defendants from manufacturing, selling, offering for sale, introducing or offering for introduction into commerce, and/or causing any of the foregoing with respect to, any new motorcycle not covered by a COC issued by EPA in accordance with the CAA and the on-highway motorcycle regulations;

b. Permanently enjoining Defendants from manufacturing, selling, offering to sell, installing, or causing any of the foregoing with respect to, Subject Tuners for use on its certified model motorcycles;

c. Permanently enjoining Defendants from causing devices or elements of design that have been installed on or in motorcycles in compliance with regulations under Title II of the CAA to be removed or rendered inoperative by the installation of the Subject Tuners;

d. Assessing a civil penalty of up to $32,500 per Subject Vehicle for each violation occurring before January 13, 2009, and up to $37,500 per Subject Vehicle for each violation occurring on or after January 13, 2009 for violations of Section 203(a)(1) of the Act;

e. Assessing a civil penalty of up to $2,750 for each violation occurring before January 13, 2009, up to $3,750 for each violation occurring on or after January 13, 2009, and up to $4,454 for each violation occurring on or after November 2, 2015 for violations of Section 203(a)(3)(B) of the Act;

f. Assessing a civil penalty of up to $32,500 for each violation occurring before January 13, 2009, up to $37,500 for each violation occurring on or after January 13, 2009, and up to $44,539 for each violation occurring on or after November 2, 2015 for violations of Section 203(a)(3)(A) of the Act;

g. Ordering Defendants to mitigate the excess tons of HC + NOx emissions that have occurred from the use of the Subject Tuners on certified motorcycles;

h. Awarding the United States its costs and disbursements in this action; and

i. Granting such other and further relief as the Court deems just and proper.

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Leslie Allen*

LESLIE ALLEN
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-4114
D.C. Bar # 421354

Of Counsel:
JOCELYN ADAIR
Attorney/Advisor
Air Enforcement Division
Office of Civil Enforcement
U. S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code:  2242A
Washington, D.C. 20460 (mail) 20004 (courier)