# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>HARLEY-DAVIDSON, INC.,  )<br>HARLEY-DAVIDSON MOTOR COMPANY  )<br>GROUP, LLC,  )<br>HARLEY-DAVIDSON MOTOR COMPANY,  )<br>INC., and  )<br>HARLEY-DAVIDSON MOTOR COMPANY  )<br>OPERATIONS, INC.,  )<br>  )<br>  Defendants.  )<br>_____)  | Case No. 1:16-CV-1687 (EGS) |

## [PROPOSED] BRIEF OF AMICI CURIAE NATURAL RESOURCES DEFENSE COUNCIL AND CONSERVATION LAW FOUNDATION IN OPPOSITION TO MOTION FOR ENTRY OF CONSENT DECREE

Zachary K. Griefen
Massachusetts BBO No. 665521
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: 802-223-5992 x4011
Email: zgriefen@clf.org

*Attorney for Proposed Amicus Curiae
Conservation Law Foundation*

Aaron Colangelo
District of Columbia Bar No. 468448
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
Tel: 202-289-2376
Fax: 415-795-4799
Email: acolangelo@nrdc.org

Claire Woods
California Bar No. 282348
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94123
Tel: 415-875-6100
Email: cwoods@nrdc.org

*Attorneys for Proposed Amicus Curiae
Natural Resources Defense Council*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Civil Rules 7(o)(5) and 7.1, Federal Rule of Civil Procedure 7.1, and Federal Rule of Appellate Procedure 29, *amicus curiae* Natural Resources Defense Council states that it is a nonprofit corporation with no parent corporations, subsidiaries, or affiliates that have outstanding stock shares or other securities in the hands of the public.

Pursuant to Local Civil Rules 7(o)(5) and 7.1, Federal Rule of Civil Procedure 7.1, and Federal Rule of Appellate Procedure 29, *amicus curiae* Conservation Law Foundation states that it is a nonprofit corporation with no parent corporations, subsidiaries, or affiliates that have outstanding stock shares or other securities in the hands of the public.

## INTERESTS OF AMICI CURIAE[1]

The Natural Resources Defense Council (NRDC) is a national non-profit, public-health and environmental advocacy organization, with more than 400,000 members throughout the United States. NRDC works to protect public health by minimizing human exposures to harmful substances, including air pollution.

The Conservation Law Foundation (CLF) is a regional non-profit advocacy organization with offices in Massachusetts, New Hampshire, Maine, Vermont, and Rhode Island, and with several thousand members across New England. CLF maintains significant interest in clean air and pollution remediation and control in New England.

---

[1] No party or party's counsel has authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting the brief. No person has contributed money that was intended to fund preparing or submitting the brief.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .................................................................................. i
INTERESTS OF AMICI CURIAE ................................................................................................... i
TABLE OF AUTHORITIES ........................................................................................................ iii
INDEX OF EXHIBITS ................................................................................................................... v
INTRODUCTION .......................................................................................................................... 1
FACTUAL BACKGROUND ........................................................................................................ 1
LEGAL STANDARD .................................................................................................................... 4
ARGUMENT .................................................................................................................................. 5
    I.    The Revised Consent Decree is not fair, reasonable, or in the public interest ................ 6
        A.  The Revised Consent Decree is not procedurally or substantively fair ....................... 6
            1.  The Revised Consent Decree is not procedurally fair ............................................. 6
            2.  The Revised Consent Decree is not substantively fair ............................................ 9
        B.  The Revised Consent Decree is not reasonable ......................................................... 10
        C.  The Revised Consent Decree is not in the public interest ......................................... 11
    II.   The Revised Consent Decree sets poor precedent ........................................................... 11
CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Citizens for a Better Env't v. Gorsuch*,
  718 F.2d 1117 (D.C. Cir. 1983) ................................................................................................ 4

*In Re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal, Jul. 29, 2016). ...................................... 12

*Janus Films, Inc. v. Miller*,
  801 F.2d 578 (2d Cir. 1986) ...................................................................................................... 5

*Sierra Club v. Coca-Cola Corp.*,
  673 F. Supp. 1555 (M.D. Fla. 1987) ....................................................................................... 11

*Stewart v. Rubin*,
  948 F. Supp. 1077 (D.D.C. 1996); ........................................................................................... 11

*U.S. SEC v. Citigroup Glob. Mkts., Inc.*,
  752 F.3d 285 (2d Cir. 2014) ...................................................................................................... 4

*United States v. Arch Coal, Inc.*,
  829 F. Supp. 2d 408 (S.D.W. Va. 2011) ................................................................................... 4

*United States v. Cannons Eng'g Corp.*,
  899 F.2d 79 (1st Cir. 1990) ................................................................................................ 6, 10

*United States v. District of Columbia*,
  933 F. Supp. 42 (D.D.C. 1996) ....................................................................................... 6, 9, 10

*United States v. MTU Am. Inc.*,
  105 F. Supp. 3d 60 (D.D.C. 2015) ............................................................................................ 4

*United States v. Telluride Co.*,
  849 F. Supp. 1400 (D. Colo. 1994) ............................................................................... 5, 6, 10

*United States v. Wells Fargo Bank, NA*,
  891 F. Supp. 2d 143 (D.D.C. 2012) .......................................................................................... 4

**Statutes and Regulations**

42 U.S.C. § 7401(b)(1) ................................................................................................................. 11

28 C.F.R. § 50.7 ............................................................................................................................. 8

**Other Authorities**

U.S. Attorney General, Prohibition on Settlement Payments to Third Parties
(June 5, 2017) .................................................................................................................. passim

U.S. Department of Justice, Settlement Payments to Third Parties in ENRD Cases
(January 9, 2018) ............................................................................................................. passim

U.S. Envtl. Prot. Agency, Securing Mitigation as Injunctive Relief in Certain Civil Enforcement
Settlements (2nd Ed. 2012) .............................................................................................. 9, 10

# INDEX OF EXHIBITS

Exhibit A.  Prohibition on Settlement Payments to Third Parties (June 5, 2017)

Exhibit B.  Settlement Payments to Third Parties in ENRD Cases (January 9, 2018)

Exhibit C.  U.S. Envtl. Prot. Agency, Securing Mitigation as Injunctive Relief in Certain Civil Enforcement Settlements (2nd Ed. 2012)

## INTRODUCTION

The United States asks this Court to enter a consent decree that leaves the American public without an adequate remedy for the unlawful air pollution caused by Defendant Harley-Davidson's violations of the Clean Air Act.[2] The parties negotiated, signed, and filed with this Court a consent decree that fairly resolved the United States' claims against Harley-Davidson. That consent decree required Harley-Davidson to pay a $12 million penalty, implement forward-looking injunctive relief, and perform a $3 million wood-stove replacement project to mitigate the illegal air emissions caused by Harley-Davidson's violations. Over a year after the consent decree was originally filed for approval by this Court, the United States now proposes a revised consent decree that omits the $3 million in relief that was previously deemed necessary to mitigate Harley-Davidson's air pollution. NRDC and CLF submit this amicus brief to oppose entry of the revised consent decree because, without the agreed-upon mitigation, it is not fair, reasonable, or in the public interest.[3]

## FACTUAL BACKGROUND

On August 18, 2016, the United States filed a complaint alleging that Harley-Davidson developed, manufactured, and installed pollution control defeat devices, in violation of section 203 of the Clean Air Act, among other violations. ECF No. 4; ECF No. 7 at 3-8 (describing Harley-Davidson's violations). The defeat devices at issue increase a motorcycle's power and performance, but also increase emissions of hydrocarbons and oxides of nitrogen (NOx), ECF No. 4 at 8 ¶ 28, which cause respiratory disease, cardiac distress, and other serious illnesses.

---

[2] The United States' complaint alleges Clean Air Act claims against Harley-Davidson, Inc., Harley-Davidson Motor Company Group, LLC, Harley-Davidson Motor Company, Inc., and Harley-Davidson Motor Company Operations, Inc. (together, Harley-Davidson).

[3] NRDC and CLF reserve their right to file a motion to intervene should this Court grant the United States' motion to enter.

1

Concurrent with its filing of the complaint, the United States filed a consent decree (Original Consent Decree) with this Court. ECF No. 2-1. Under the Original Consent Decree, Harley-Davidson agreed to invest $3 million in a wood stove replacement project to mitigate the excess air pollution caused by its violations. *Id.* at 9 ¶ 17. The project was designed to replace older wood stoves, which produce the same harmful NOx emissions caused by Harley-Davidson's violations, with emissions-certified wood stoves. *Id.* App. A. In doing so, the Original Consent Decree would offset some of the excess air pollution caused by Harley-Davidson. Harley-Davidson was responsible for completing the mitigation project, but the project was to be administered by the American Lung Association of the Northeast. *Id.* App. A, at 2 ¶ 6. The project did not require Harley-Davidson to make any cash payments to the American Lung Association or any other third-party organizations. *Id.* The United States and Harley-Davidson represented to this Court that the terms of the Original Consent Decree, including the mitigation project, were "fair, reasonable, and in the public interest." ECF No. 2-1 at 2. Both parties signed the settlement and submitted it to this Court. *Id.* at 29-31. However, on November 15, 2016, during the week that followed the 2016 Presidential Election, the United States sought an extension, to provide time to review public comments and reconsider the settlement. ECF No. 5.

On June 5, 2017, the Attorney General issued a Prohibition on Settlement Payments to Third Parties (June 5, 2017) (Sessions Prohibition) (attached as Exhibit A). The one-page Sessions Prohibition bars settlements that "direct[] or provide[] for a payment or loan to any non-governmental person or entity that is not a party to the dispute." *Id.* However, it does not prohibit any "otherwise lawful payment . . . that . . . directly remedies the harm that is sought to be redressed, including, for example, harm to the environment." *Id.* Importantly, the Sessions

2

Prohibition does not limit the United States' authority to incorporate mitigation projects in its settlements, nor does it bar those mitigation projects from being administered or implemented by third parties.

On July 20, 2017, less than two months after issuance of the Sessions Prohibition, the United States lodged a revised consent decree (Revised Consent Decree) that omits the mitigation project. ECF No. 6-1. All other settlement terms remained unchanged. The Revised Consent Decree does not include any alternative relief that would mitigate the past air pollution caused by Harley-Davidson's violations. The notice of lodging that accompanied the Revised Consent Decree argued that the revision was necessary because of the June 5, 2017 Sessions Prohibition. ECF No. 6, at 2-3. On December 12, 2017, the United States moved to enter the Revised Consent Decree over the objection of numerous commenters, including NRDC and CLF. ECF No. 7.

Recently, the U.S. Department of Justice issued a memorandum interpreting the Sessions Prohibition as it applies to environmental cases. Settlement Payments to Third Parties in ENRD Cases (January 9, 2018) (Wood Memorandum) (attached as Exhibit B). That memorandum confirms that the Sessions Prohibition does not apply to projects that "directly remed[y] the harm that is sought to be addressed," "including, for example, harm to the environment." *Id.* at 1. The Wood Memorandum offered the following example of a permissible project: "In a Clean Air Act enforcement case involving mobile source pollution, it would be consistent with the [Sessions Prohibition] to incorporate a lawful payment that directly remedies the same kind of harm (e.g., excess nitrogen oxide (NOx) emissions []) that resulted from the unlawful conduct if the payment is used to reduce the same type of harm through the founding of actions at the source or in the same airshed as the source." *Id.* at 4.

3

The Revised Consent Decree requires Harley-Davidson to pay a civil penalty, which will be deposited in the General Treasury, and implement forward-looking injunctive relief. ECF No. 7 at 9-12 (requiring future compliance with the Clean Air Act). However, it no longer requires Harley-Davidson to offset the harm caused by its illegal air pollution. The United States relies on the Sessions Prohibition to justify its decision to remove that valuable relief from the settlement. However, the Sessions Prohibition and the Wood Memorandum specifically allow mitigation projects like the one at issue here. Such mitigation is a valuable and necessary component of a fair and reasonable resolution of Harley-Davidson's violations, particularly here, where hundreds of thousands of the offending defeat devices remain on American roads.

## LEGAL STANDARD

Authority to approve or disapprove of this settlement lies with this Court. *See United States v. Wells Fargo Bank, NA*, 891 F. Supp. 2d 143, 145 (D.D.C. 2012). To approve the settlement, this Court must determine that "the settlement is fair, adequate, reasonable and appropriate under the particular facts." *United States v. MTU Am. Inc.*, 105 F. Supp. 3d 60, 62 (D.D.C. 2015) (citing *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983)). This Court must also consider, among other factors, whether the settlement reflects a resolution of the claims in the complaint and whether the settlement is tainted by improper collusion or corruption of some kind. *See U.S. SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 294-95 (2d Cir. 2014); *United States v. Arch Coal, Inc.*, 829 F. Supp. 2d 408, 415-16 (S.D.W. Va. 2011). While courts hold considerable discretion in evaluating a settlement, they apply increased scrutiny where the settlement affects the public interest. *See United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994); *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir. 1986).

## ARGUMENT

The Revised Consent Decree deprives the American public of valuable pollution reductions that would have offset the harm caused by Harley-Davidson's unlawful actions. Without the agreed-upon mitigation project, the Revised Consent Decree does not address the substantial air pollution to which Americans have been unlawfully exposed. And the United States has not explained why this mitigation project, which it carefully drafted and negotiated for inclusion in the Original Consent Decree, is no longer required to make the public whole. Instead, to justify its weakening of the settlement, the United States offers only its own uncertainty about whether the Sessions Prohibition applied to the mitigation project, ECF No. 6 at 2, and a statement that "[t]he parties were unable to reach agreement on a revised or alternative mitigation project."[4] ECF No. 7 at 31. These wavering justifications are inadequate, particularly considering the recently issued Wood Memorandum, which explicitly authorizes mitigation projects administered by third parties in settlements resolving the very same Clean Air Act violations that are at issue here. Ex. B, Wood Memorandum at 4.

In light of these facts, there is no reasoned justification for the removal of the mitigation project from the Revised Consent Decree. Indeed, the Revised Consent Decree appears to be the result of a questionable closed-door negotiation process, from which the public has been entirely excluded. This Court should decline to enter the Revised Consent Decree unless and until the parties incorporate an emissions reduction project that mitigates Harley-Davidson's illegal air pollution.

---

[4] The United States suggests that it could not force Harley-Davidson to accept an alternative mitigation project, but does not explain Harley-Davidson's objection to the wood stove project to which it had already agreed. ECF No. 7 at 31 n.18.

## I. The Revised Consent Decree is not fair, reasonable, or in the public interest

### A. The Revised Consent Decree is not procedurally or substantively fair

This Court may only approve the Revised Consent Decree if it determines that the settlement is procedurally and substantively fair. The "assessment of procedural fairness involves looking 'to the negotiating process and attempt[ing] to gauge its candor, openness, and bargaining balance.'" *United States v. District of Columbia*, 933 F. Supp. 42, 48 (D.D.C. 1996) (alteration original) (quoting *Telluride Co.*, 849 F. Supp. at 1402). A settlement may be procedurally fair where it is the result of an arms-length negotiation. *See, e.g.*, *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 87 (1st Cir. 1990). Likewise, a settlement is substantively fair if it incorporates "concepts of corrective justice and accountability" and ensures that the defendant "bear[s] the . . . harm for which it is legally responsible." *Id.*

#### 1. The Revised Consent Decree is not procedurally fair

The omission of the mitigation project from the Revised Consent Decree, and the information available about the circumstances under which the project was omitted, indicate that the Revised Consent Decree is not procedurally fair.

First, the United States has not explained why it sought to renegotiate the Original Consent Decree to exclude the mitigation project. According to the United States, it delayed seeking entry of the Original Consent Decree, just over a week after the 2016 Presidential Election, because of public comments received. However, that claim is contradicted in its Notice of Lodging, in which the United States conceded that the mitigation project was omitted from the Revised Consent Decree because of is its own uncertainty about whether the mitigation project would be barred by the Sessions Prohibition. ECF No. 6 at 2. Now, in its motion to enter, the United States claims that its initial delay was unrelated to the issuance of the Sessions

6

Prohibition. ECF No. 7 at 31 n.19. These contradictory justifications for the removal of the mitigation project leave the public without any reasoned explanation for the substantial weakening of the Original Consent Decree.

Indeed, the removal of the mitigation project from the settlement is puzzling, given that it does not fall within the plain language of the Sessions Prohibition. The mitigation project did not "direct[] or provide[] for a payment or loan to any nongovernmental person or entity that is not a party to the dispute." Ex. A, Sessions Prohibition. It did not require and, in fact, would not allow, Harley-Davidson to make a lump sum payment to the American Lung Association. Rather, Harley-Davidson retained sole legal responsibility for the project, with the American Lung Association serving as the "implementing entity" to aid in the project's execution. ECF No. 2-1, App. A at 2 ¶¶ 4, 6. Moreover, the Original Consent Decree required Harley-Davidson and the American Lung Association to develop an agreement, which could have been carefully developed and reviewed by the United States to ensure consistency with the Sessions Prohibition.[5] *Id.* at 2-3 ¶ 7. The Revised Consent Decree is procedurally unfair considering the clear inapplicability of the Sessions Prohibition to the mitigation project.

The recent Wood Memorandum further undercuts the United States' justification for the weakening of the Original Consent Decree. *See* Ex. B, Wood Memorandum. The Wood Memorandum clarifies the Sessions Prohibition's exception for environmental cases and affirmatively states that mitigation projects may be used to resolve violations under the Clean Air Act's mobile source provisions. *Id.* at 4 (allowing projects to mitigate the same kind of harm—

---

[5] Even if the Sessions Prohibition did apply, it provides an exception for any "otherwise lawful payment . . . that . . . directly remedies the harm that is sought to be redressed, including, for example, harm to the environment." Ex. A, Sessions Prohibition. Moreover, the mitigation project is entirely consistent with the Sessions Prohibition Memo's goal to "first and foremost . . . compensate victims, redress harm, or punish and deter unlawful conduct." *Id.*

7

including NOx emissions—that resulted from the unlawful conduct). For further clarification, the Wood Memorandum offers several examples of permissible projects under the Sessions Prohibition. One such example presents facts that appear nearly identical to the mitigation project at issue here. *Id.* at 4. Both would resolve violations of the Clean Air Act's mobile source provisions. Both address mitigation of illegal NOx emissions. And both leave room for structuring the project to ensure nation-wide relief. Although the Wood Memorandum was released after the United States filed its motion to enter in this case, that timing does not justify the abandonment of mitigation relief that is entirely consistent with the United States' policy.

Additionally, in arguing that the settlement is procedurally fair, the United States claims that it spent a year negotiating the settlement. ECF No. 7 at 15. However, the Sessions Prohibition was issued on June 5, 2017, less than six weeks before the United States re-filed the Revised Consent Decree on July 20, 2017. ECF No. 6 at 2. It is highly unlikely that a robust, arms-length negotiation concerning substantial changes to the scope of relief required under the settlement could have occurred in only six weeks. The hurried timeline for renegotiation of the settlement indicates that the Revised Consent Decree is procedurally unfair.

Finally, the procedural unfairness of the Revised Consent Decree is underscored by the United States' admission that it could not force Harley-Davidson to agree to an alternative mitigation project. ECF No. 7 at 31 n.18. The United States states the "parties were unable to reach agreement" on an alternative mitigation project, but it does not adequately explain why an alternative was required. ECF No. 7 at 17. Although the United States has not directly addressed the matter, it appears that, after the 2017 Presidential Election, Harley-Davidson refused to agree to the mitigation project to which it previously agreed. Harley-Davidson's apparent refusal to

8

proceed is troubling, given that the settlement states that Harley-Davidson may not withdraw support for the settlement once it has signed the Consent Decree. ECF No. 2-1 at 27 ¶ 74.

Federal Regulations provide the public with an opportunity to submit comments on a proposed consent decree. *See* 28 C.F.R. § 50.7. However, the public cannot meaningfully comment without a transparent explanation for the curtailment of the Consent Decree's scope. The lack of transparency surrounding the renegotiation of the Original Consent Decree, and the interference with the public's right to submit comments on the merits of the Revised Consent Decree, makes the Revised Consent Decree procedurally unfair.

### 2. The Revised Consent Decree is not substantively fair

The Revised Consent Decree is not substantively fair because it does not require Harley-Davidson to offset the harm for which it is legally responsible. *See District of Columbia*, 933 F. Supp. at 48. In determining appropriate relief to require in the settlement, the United States would have considered the "extent of harm the violations caused" as well as "[t]he amount of illegal pollution and the severity of public health, environmental or other impacts." U.S. Envtl. Prot. Agency, Securing Mitigation as Injunctive Relief in Certain Civil Enforcement Settlements 7 (2nd Ed. 2012) (Mitigation Policy) (attached as Exhibit C). After considering these factors, and based on the terms of the Original Consent Decree, the United States determined that it was necessary for Harley-Davidson to spend $3 million to mitigate the harm from its unlawful emissions. That mitigation was included in the settlement to make the public whole.

Now, over a year later, none of the facts that support the application of the Mitigation Policy have changed. The extent of harm caused by Harley-Davidson's violations and the resulting illegal pollution remain the same. There has been no improvement in the public health injuries that occurred as a result of Harley-Davidson's unlawful emissions. And yet, the Revised

Consent Decree omits significant relief that was originally included to address these harms. Here, like in *United States v. Telluride Co.*, the relief required under the Revised Consent Decree addresses only a fraction of the harm caused by Defendants' violations. 849 F. Supp. at 1405 (restoration required under a settlement amounted to "only 15.43 acres . . . despite estimates that approximately 45 to 47 acres were destroyed").

### B. The Revised Consent Decree is not reasonable

The Revised Consent Decree is not reasonable because it does not adequately protect the environment and does not sufficiently compensate the public. *See District of Columbia*, 933 F. Supp. at 50; *Cannons Eng'g*, 899 F.2d at 89-90.

Settlements resolving environmental claims include injunctive relief to ensure that future operations and activities come into and remain in compliance with the law. Injunctive relief often takes the form of forward-looking physical improvements or operational changes at a facility, such as installation of pollution control equipment or a commitment to comply with statutory monitoring requirements. However, the injunctive relief also includes "relief requiring a defendant to remedy, reduce or offset harm caused by past or ongoing violations." Mitigation Policy 2. The purpose of a mitigation action is to, as nearly as possible, restore the *status quo*. *Id.* at 4. By including mitigation in its settlements, the United States (and private plaintiffs in citizen suits) ensure that the injuries caused by a defendant's violations are redressed. *Id.* at 3. The mitigation project at issue here would restore the *status quo* by avoiding additional air pollution of the same type that occurred as a result of Harley-Davidson's violations. Without the mitigation project, the injuries caused by Harley-Davidson's violations have not been adequately addressed.

### C. The Revised Consent Decree is not in the public interest

The Revised Consent Decree is not in the public interest because the removal of the mitigation project is inconsistent "with the public objectives sought to be attained by Congress." *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996); *see also Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1556 (M.D. Fla. 1987) ("Where the lawsuit seeks to enforce a statute, the most important factor as to public policy is whether the decree comports with the goals of Congress.").

In support of its position, the United States summarily states that the Revised Consent Decree furthers the objectives embodied in the Clean Air Act. However, the $12 million civil penalty will be deposited in the General Treasury and, as such, will not directly address the injuries caused by Harley-Davidson's illegal pollution. Additionally, the injunctive terms are forward-looking, and do not mitigate harm that has already occurred. Nor does the Revised Consent Decree contain a requirement to remove the illegal devices that are currently on the road because, according the United States, such an endeavor would be "very difficult." ECF No. 7 at 18 n.9. Thus, Congress' goal to "protect and enhance the quality of the Nation's air resources," remains largely unaddressed. 42 U.S.C. § 7401(b)(1).

## II. The Revised Consent Decree sets poor precedent

In removing the wood stove mitigation project, the Revised Consent Decree fails to adequately mitigate the environmental harm caused by Harley-Davidson's violations of the Clean Air Act. Mitigation is an important element of environmental settlements, as demonstrated by the Environmental Protection Agency's extensive Mitigation Policy and the numerous settlements that have incorporated mitigation actions. Mitigation projects provide important relief to the public that has been harmed by a defendant's violations. For example, the District

Court for the Northern District of California recently approved a consent decree resolving similar allegations that Volkswagen installed illegal defeat devices on its vehicles, in violation of the Clean Air Act. *See In Re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at *15 (N.D. Cal, Jul. 29, 2016). Under that consent decree, Volkswagen was required to perform mitigation, valued at $2.7 billion, to offset the NOx caused by its illegal defeat devices. *Id.* While the mitigation required in that case was far greater than the wood stove mitigation project at issue here, it demonstrates the important role mitigation holds in compensating the public for a defendant's environmental harms. The United States' abandonment of this mitigation project, and mitigation projects in general, would drastically undermine its ability to effectively enforce our nation's environmental laws.

## CONCLUSION

For the foregoing reasons, NRDC and CLF respectfully request that this Court decline to enter the Revised Consent Decree.

Respectfully submitted on January 31, 2018, by:

        Natural Resources Defense Council

        Through its attorneys:

        /s/ Aaron Colangelo
        Aaron Colangelo
        District of Columbia Bar No. 468448
        Natural Resources Defense Council
        1152 15th Street NW, Suite 300
        Washington, DC 20005
        Tel: 202-289-2376
        Fax: 415-795-4799
        Email: acolangelo@nrdc.org

        /s/ Claire Woods
        Claire Woods
        California Bar No. 282348

        Natural Resources Defense Council
        111 Sutter Street, 21st Floor
        San Francisco, CA 94123
        Tel: 415-875-6100
        Email: cwoods@nrdc.org

        Conservation Law Foundation

        Through its attorney:

        <u>/s/ Zachary K. Griefen</u>
        Zachary K. Griefen
        Massachusetts BBO No. 665521
        Conservation Law Foundation
        15 East State Street, Suite 4
        Montpelier, VT 05602
        Tel: 802-223-5992 x4011
        Email: zgriefen@clf.org