# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HARLEY-DAVIDSON, INC., )<br>HARLEY-DAVIDSON MOTOR COMPANY )<br>GROUP, LLC, )<br>HARLEY-DAVIDSON MOTOR COMPANY, )<br>INC., and )<br>HARLEY-DAVIDSON MOTOR COMPANY )<br>OPERATIONS, INC., )<br>)<br>Defendants. )<br>_____ ) | Case No. 1:16-CV-1687 (EGS) |

# EXHIBIT B
# SETTLEMENT PAYMENTS TO THIRD PARTIES
# IN ENRD CASES (JANUARY 9, 2018)



**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Acting Assistant Attorney General*　　　　　　　　　　　　　　　*Telephone (202) 514-2701*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530-0001*

TO:         ENRD Deputy Assistant Attorneys General and Section Chiefs

FROM:       Jeffrey H. Wood, Acting Assistant Attorney General

SUBJECT:    Settlement Payments to Third Parties in ENRD Cases

DATE:       January 9, 2018

On June 5, 2017, the Attorney General signed a memorandum ("June 5 memorandum") to all Department of Justice (DOJ) component heads and U.S. Attorneys entitled, "Prohibition on Settlement Payments to Third Parties." This Environment and Natural Resources Division (ENRD or the Division) memorandum provides guidance concerning the application of the June 5 memorandum to the "settlement of federal claims or charges" in ENRD civil enforcement and criminal cases.

The June 5 memorandum establishes an important DOJ policy that affects ENRD settlement practices by disallowing settlement payments to third-party organizations that were neither victims nor parties to the lawsuit. As set forth below, however, the June 5 memorandum permits the limited use of certain types of third-party payments in some environmental cases in appropriate circumstances. Such third-party payments should only be included in a settlement agreement or consent decree after thorough and careful review to ensure consistency with this DOJ policy. Use of such payments will not be routine in ENRD matters and is subject to restrictions and prohibitions as set forth in this memorandum. The Assistant Attorney General (AAG) must in all cases approve any third-party payment before any such provision may be included in any ENRD agreement or decree.

## Section 1. General Prohibition Against Settlement Payments to Third Parties

In accordance with the June 5 memorandum, ENRD attorneys shall not enter into any agreement on behalf of the United States in settlement of federal claims or charges — including agreements settling civil litigation, accepting plea agreements, or deferring or declining prosecution in a criminal matter — that directs or provides for a payment or loan to any non-governmental person or entity that is not a party to the dispute, unless (1) the payment meets one of the three limited exceptions set forth in the June 5 memorandum, and (2) the appropriate advance approval has been obtained, as discussed below.

This prohibition applies to any civil or criminal agreement or consent decree entered into on behalf of the United States in any ENRD case, matter, or appeal and must be followed

throughout the Division. Furthermore, settlement remedies must comply with all applicable statutory authorities and controlling court precedents.[1] Settlement agreements should also promote legitimate goals of federal environmental enforcement. Federal environmental enforcement goals can be, and often have been, fully accomplished in ENRD cases without payments to third parties. In a limited number of cases, third-party payments may be consistent with the June 5 memorandum and appropriate to effectively accomplish these goals. Such payments are not necessary in many cases and should only be included in a settlement agreement after a thorough and careful review to ensure consistency with this DOJ policy.

Additionally, where a third-party payment contemplated by a settlement would fund an activity that is essentially the same as one for which Congress has already authorized and funded a program, the Division will closely scrutinize any such proposed third-party payment, and may forego such a project or seek to identify an alternate project to directly and effectively remedy the environmental harm consistent with the June 5 memorandum.

Congress has established amounts for assessing penalties in environmental cases. Absent explicit authorization from Congress to the contrary, penalties, when recovered, are directed to the United States Treasury for further appropriation by Congress. In no event should a third-party payment be included as an offset or otherwise to allow for a reduction in the imposition of civil or criminal monetary penalties.

Third-party settlement payments that fund political activities, lobbying, litigation, or other activities that do not remedy environmental harm are absolutely prohibited.

### Section 2. Limited Exception for Payments to Directly Remedy Harm to the Environment

As set forth in the June 5 memorandum, the third-party payment prohibition does not apply to an otherwise lawful payment or loan that "directly remedies the harm that is sought to be redressed" in the action "including, for example, harm to the environment." For purposes of ENRD cases, "harm that is sought to be redressed" generally refers to pollution, land disturbance, human health effects, injuries to natural resources, or other environmental impacts caused by unlawful activity that is the subject of the civil or criminal action. In limited circumstances approved by the ENRD AAG, a study performed by a non-governmental third party of environmental impacts caused by the violations at issue in the litigation may be a component of a plan to directly remedy environmental harm.

To help guide ENRD attorneys in evaluating the impact of the June 5 memorandum, the following examples are provided for illustrative purposes. The examples below incorporate restrictions and requirements applicable to particular categories of the Division's litigation matters. Division leadership can provide additional guidance for circumstances that are not

---

[1] For example, an important constraint on settlement authority is the Miscellaneous Receipts Act (MRA), 31 U.S.C. § 3302(b), which requires that all civil and criminal fines be deposited in the United States Treasury absent congressional direction to the contrary. See also 31 U.S.C. § 1341(a)(1)(A) (Anti-Deficiency Act).

addressed in the following examples. A third-party payment provision must incorporate specific requirements to ensure that the payment will directly remedy the harm that is sought to be redressed. Any payment must be subject to express requirements to ensure that the "directly remedy" standard is met, and the materials prepared for AAG approval must provide additional detail to demonstrate that the standard is satisfied. Thus, for example, a provision stating in general terms that monies will fund habitat improvements by a particular third-party organization will not contain sufficient specificity to ensure that the standard is met.

   a. In an enforcement case under section 404 of the Clean Water Act, the "harm that is sought to be redressed" would generally refer to the harm resulting from unpermitted discharge of dredged or fill material into waters of the United States. In such cases, it would be consistent with the June 5 memorandum to incorporate an otherwise lawful payment (e.g., to an approved mitigation bank or in-lieu fee program) to directly remedy that harm through preservation, creation, and/or restoration of wetlands (or other waters) at the site or generally within the same watershed as the impacted site and where it is most likely to replace lost function or services of the site. See 33 C.F.R. § 332.3(b). In some instances, existing policies of client agencies may inform this analysis. EPA and Army Corps of Engineers regulations address the use and location of compensatory mitigation for losses of aquatic resources in the permitting context. See 33 C.F.R. Part 332; 40 C.F.R. Part 230. For example, if a defendant agrees to establish a conservation easement over a parcel restored pursuant to a settlement agreement, there may be an incidental payment to the entity holding the conservation easement to defray costs of monitoring and maintaining the easement, so long as the easement is an integral part of the relief and directly remedies the harm that is sought to be redressed.

   b. In an enforcement case under section 402 of the Clean Water Act, such as a case involving a discharge exceeding the levels allowed by an applicable permit, an appropriate third-party payment would directly remedy harm to affected bodies of water and associated aquatic or riparian life associated with the violation. Such a project might involve cleanup of pollution in the affected watershed, or preservation or restoration of aquatic or riparian life or habitat associated with that watershed. Care should be taken to ensure that the project does not mitigate harm out of proportion with the harm that resulted from the unlawful conduct.

   c. In a vessel pollution case involving unlawful discharges of oily wastewater, garbage, or other pollution into an ocean, river, or other major water body, a third-party payment to support cleanup of pollution from the water body or to preserve aquatic life in the relative geographic vicinity of the unlawful activity would directly remedy the harm and be consistent with this policy, as would payments to support cleanup or restoration of shorelines for the relevant water body. By contrast, a payment to clean up unrelated water bodies or to preserve aquatic life that was not harmed by the unlawful activity would not suffice to meet the "directly remedy" standard.

   d. In a Clean Air Act enforcement case involving stationary source pollution, it would be consistent with the June 5 memorandum to incorporate a lawful payment that directly remedies the same kind of harm (e.g., harm from excess sulfur dioxide ($SO_2$) emissions) that resulted from the unlawful conduct if the payment is used to reduce the same type

of harm through the funding of actions at the source or in the same airshed[2] as the source. Care should be taken to ensure that the project does not mitigate harm out of proportion with the harm that resulted from the unlawful conduct. For this and the other examples in this section, ENRD's client agencies, such as EPA, may have applicable policies that may further inform decisions involving the selection of projects to mitigate the harm in question.

e. In a Clean Air Act enforcement case involving mobile source pollution, it would be consistent with the June 5 memorandum to incorporate a lawful payment that directly remedies the same kind of harm (e.g., excess nitrogen oxide (NOx) emissions or ozone pollution caused by such NOx emissions) that resulted from the unlawful conduct if the payment is used to reduce the same type of harm through the funding of actions at the source or in the same airshed as the source. Mobile source cases often involve excess emissions that occurred nationwide. In such cases, the scope of the mitigation project, if any, should take that into account. For example, excess emissions nationwide could be addressed through a project that addresses the relevant harm in areas in multiple regions of the United States, or that otherwise would make widely distributed areas eligible for mitigation, such as selected nonattainment areas. In such cases, additional care should be taken to ensure that the project directly remedies environmental harm, which should include assurances that the project does not mitigate harm out of proportion with the harm that resulted from the unlawful conduct.

f. In a civil enforcement matter under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), when a responsible party has agreed to conduct a cleanup of a contaminated site, payments to implement that cleanup will generally qualify as directly remedying harm to the environment. In such cases, the settlement agreement may also include a provision requiring that party to secure access to nearby contaminated properties that are owned by third parties, and provide for payments to property owners where necessary for sampling, cleanup, or other CERCLA purposes. Such payments, for example, might reflect the loss of the property owner's ability to use the property while a cleanup or sampling is underway. This type of payment is an integral part of the overall cleanup plan, and therefore "directly remedies the harm that is sought to be redressed."[3]

g. Section 107(f)(1) of CERCLA provides that natural resource damages (NRD) recovered on behalf of a federal trustee "shall be retained by the trustee, without further

---

[2] For purposes of this ENRD memorandum, the term "airshed" refers to either the Federal Air Quality Control Region (as referenced in 42 U.S.C. § 7407) where the facility is located or the area reasonably expected to have been affected by, or where remedial actions could be taken to remedy the harm from, the violations for which mitigation is being sought.

[3] Another situation arising under CERCLA or the Resource Conservation and Recovery Act involves payment of monies from a bankrupt entity to an environmental response trust or trustee appointed by a bankruptcy court, receiver, or similar entity. The purpose of these entities is to conduct cleanup activities. Because such a trust is a successor for limited purposes to the bankrupt entity, such a payment is not a payment to a third party for purposes of the June 5 memorandum.

appropriation, for use only to restore, replace, or acquire the equivalent of such [injured] natural resources." 42 U.S.C. § 9607(f)(1). Section 1006(f) of the Oil Pollution Act similarly requires trustees to retain NRD recoveries "without further appropriation, for use only to reimburse or pay the costs incurred by the trustee under subsection (c) of this Section [i.e., assessing NRD and developing and implementing a plan for the restoration, rehabilitation, replacement, or acquisition of the equivalent of the injured resources]." 33 U.S.C. § 2706(f). In general, payments to third parties to implement NRD restoration will constitute payments to directly remedy environmental harm. Payments of NRD monies that comply with the foregoing statutory standards also are "payments expressly authorized by statute" and are permissible under the June 5 memorandum for that reason.

h. In a wildlife trafficking case, a third-party payment to directly remedy harm must focus on protection and recovery for the affected species, preferably the affected *population* of that species where possible. A payment that addresses recovery for a different or unrelated species does not satisfy the "directly remedy" standard.

The identification of the examples listed above does not mean that third-party payment provisions are necessary or should be included in all such contexts. Compliance with this policy should be demonstrated in the settlement agreement or consent decree, or in the accompanying approval documents submitted to the AAG.

### Section 3. Payments to Governmental Entities

Under the June 5 memorandum, ENRD attorneys may not enter into settlements of federal claims or charges providing for a payment or loan to "any non-governmental person or entity that is not a party to the dispute." Accordingly, non-governmental associations, private foundations, or other private parties do not qualify and cannot be a recipient of any third-party payments in ENRD settlements or agreements unless otherwise in compliance with this policy (e.g., the payment directly remedies the environmental harm that is sought to be redressed in the enforcement action).

Because the June 5 memorandum restricts payments or loans to "non-governmental entities," payments made to governmental entities are not expressly within its scope. This section sets forth additional requirements that are applicable to payments made to governmental entities, to ensure that such payments are consistent with the goals of the June 5 memorandum and are appropriate in all instances. Importantly, to be consistent with the June 5 memorandum, payments to federal, state, territorial and tribal governments must have a clear nexus to the environmental harm that is sought to be remedied, and such payments shall be reasonably designed to repair the harm to the environment that is sought to be redressed.

There is also a limited set of governmental entities created by Congress, or by states, territories, or tribes that may require case-by-case review for purposes of applying this policy. For example, many previous ENRD settlements have provided for payments to congressionally chartered corporations such as the National Fish and Wildlife Foundation (NFWF). NFWF was created by Congress, receives congressional appropriations, is subject to congressional oversight, pursues federal governmental objectives, and has a board of governors appointed by the Executive

Branch. These features can suffice to render a congressionally chartered entity a governmental actor for some purposes.[4] Another key attribute of NFWF and similar instrumentalities is that Congress has expressly authorized them to "encourage, accept, and administer private gifts of property" in connection with their operations. 16 U.S.C. § 3701(b)(1). NFWF also reports annually to Congress on its activities, providing an additional source of accountability. Although NFWF and other similar entities may be viewed as "governmental entities" for these purposes, the Division will only agree to a third-party payment to such entities if the "directly remedy" standard of the June 5 memorandum is met.

### Section 4. Selection of Third Parties

When inclusion of a third-party payment provision is appropriate and consistent with the June 5 memorandum, care should be taken in the selection of the third party. In no case should a third party be selected on the basis of political affiliation, personal relationship with or financial interest of any person or entity involved in the case, or any other improper basis. Any third-party payment must also comply with all applicable DOJ regulations and policies, including but not limited to those related to conflicts of interest.

Factors governing the selection of third parties should include, among other things, experience with the kind of work necessary to remedy the environmental harm at issue in the case; ability of the third party to complete the remedy project in a timely and cost-effective manner; and minimization of administrative overhead costs. To ensure transparency and accountability, appropriate measures should be included in the third-party payment provisions to allow for DOJ (or the client agency) to verify compliance with this policy and completion of the remedy project in a timely and cost-effective manner.

In civil cases involving a third-party payment, the defendant will, as a general rule, propose an appropriate third party, subject to ENRD approval (with client agency concurrence, where appropriate). Where a third party is not specifically identified at the time a case is resolved, the settlement instrument will generally provide objective criteria to guide both the defendant's selection of such a party and the government's review and approval, in a manner consistent with this policy.

In criminal cases, when community service payments are determined to be an appropriate part of a sentence, Environmental Crimes Section (ECS) prosecutors will generally designate one or more governmental entities and/or congressionally chartered corporations as recipients of the community service payments. In the unusual case in which a community service payment to directly remedy harm to the environment is more effectively directed to a non-governmental third-party entity, ECS prosecutors shall follow all existing Department and Division policies and applicable laws and regulations in selecting the third party, as well as the provisions of this memorandum. As a rule in criminal cases, any third party will be selected prior to sentencing.

---

[4] The Supreme Court has found that a congressionally chartered entity with these attributes is sufficiently "governmental" in character that its actions are constrained by the First Amendment. See *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 398 (1995).

- 6 -

## Section 5. Inclusion by States or Tribes of Third-Party Payments

In recognition of the cooperative federalism principles embodied in federal environmental statutes and the primary role of the states and of federally recognized tribes in environmental enforcement, this DOJ policy does not prohibit ENRD from participating in settlements of civil cases involving joint federal-state or federal-tribal enforcement with third-party payment provisions that would otherwise conflict with this policy. However, ENRD participation in such settlements is disfavored. Moreover, ENRD attorneys should not encourage any attorney for a state, tribe, or any other party to seek to include provisions that would otherwise violate this policy in any agreement that is to be joined by ENRD on behalf of the United States. Where this type of payment is included, it must meet the following conditions: (a) such payment provisions are included solely on the basis of settlement of state claims (or claims under tribal law) and included in the agreement at the request of the relevant state or tribe; (b) ENRD has been advised by the state or tribe that the provision is consistent with state or tribal law; (c) the state or tribe has been provided a copy of the Attorney General's June 5 memorandum and this ENRD memorandum; (d) the agreement separately and expressly links the third-party payment provision to state or tribal law; and (e) such payment provision is reviewed and approved by the AAG.

## Section 6. Environmental Crimes

The June 5 memorandum does not apply to "an otherwise lawful payment or loan that provides restitution to a victim." The memorandum does apply to community service payments to the extent those provisions involve payments to third parties. Consistent with this policy, any community service payment that involves an otherwise lawful payment or loan to a non-governmental third party must "directly remedy" the environmental harm that is sought to be redressed. ENRD attorneys should ensure that there is a clear nexus between the affected environmental medium and the remedial activity funded through the community service payment.

The June 5 memorandum does not apply to an otherwise lawful payment or loan that directly remedies harm from "official corruption."

The Department of Justice and ENRD have applicable policies governing criminal proceedings and community service payments generally. Relevant policies appear in the U.S. Attorneys' Manual, *see* USAM §§ 5-11.115, 9-16.325, or are available from the Environmental Crimes Section (but may be subject to restrictions on release and distribution). Note in particular the January 16, 2009 memo by Assistant Attorney General Ronald J. Tenpas entitled, "Guidance on Restitution, Community Service and Other Sentencing Measures Imposed in Environmental Crimes Cases," which contains relevant guidance for federal prosecutors considering community service in environmental crimes cases. Those policies remain applicable, in addition to the provisions of this guidance.

### Section 7. General Terms and Conditions

a. The June 5 memorandum states that the third-party payment policy "does not apply to payments for legal or other professional services rendered in connection with the case."

b. As the June 5 memorandum states, the policy "does not apply to payments expressly authorized by statute, including restitution and forfeiture." For example, the Act to Prevent Pollution from Ships provides for an award of a portion of the fine imposed "to the person giving information leading to conviction." 33 U.S.C. § 1908(a).

c. This policy does not prohibit, as part of a settlement, a defendant from agreeing to undertake a supplemental environmental project related to the violation, so long as it is consistent with EPA's Supplemental Environmental Projects (SEP) Policy, which already expressly prohibits all third-party payments.

d. This policy does not apply to administrative enforcement actions taken by federal agencies prior to referral of a matter to the Department. If DOJ agreement or concurrence in the agency administrative action is required, then this policy governs DOJ's agreement or concurrence.

e. To the extent any provision of this memorandum is inconsistent with the June 5 memorandum or any subsequent guidance from the Office of the Attorney General, Office of the Deputy Attorney General, or Office of the Associate Attorney General, the June 5 memorandum and such other guidance shall control over this memorandum.

f. All third-party payments must be consistent with the Miscellaneous Receipts Act, the Anti-Deficiency Act, and other applicable laws and regulations.

g. The AAG may issue additional memoranda or requirements applicable to ENRD cases to supplement the provisions of this memorandum.

h. This memorandum is not intended to be, and may not be, relied upon to create any rights, substantive or procedural, enforceable at law by any party in any civil or criminal matter. This memorandum is administered by the Division as a matter of enforcement discretion, and its provisions are not intended to be applied by a court.

### Section 8. Effective Date

This ENRD memorandum is effective immediately. In the event an ENRD attorney is seeking to modify a third-party payment provision in an existing settlement that has been entered by a federal court, or to add such a provision to an existing settlement, any such modification will be subject to AAG approval.

cc:
Director, Executive Office for United States Attorneys
Assistant Administrator for Enforcement and Compliance Assurance, U.S. Environmental Protection Agency
General Counsel, U.S. Environmental Protection Agency
Solicitor, U.S. Department of the Interior
General Counsel, National Oceanic and Atmospheric Administration, U.S. Department of Commerce
Judge Advocate General and Chief Counsel, Coast Guard, U.S. Department of Homeland Security
General Counsel, U.S. Department of the Army
Chief Counsel, U.S. Army Corps of Engineers
General Counsel, U.S. Department of Agriculture
General Counsel, U.S. Department of Transportation
General Counsel, U.S. Department of Housing and Urban Development