## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:16-CV-1687 (EGS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARLEY-DAVIDSON, INC., | ) | **CONSENT DECREE** |
| HARLEY-DAVIDSON MOTOR COMPANY | ) | |
| GROUP, LLC, | ) | |
| HARLEY-DAVIDSON MOTOR COMPANY, | ) | |
| INC., and | ) | |
| HARLEY-DAVIDSON MOTOR COMPANY | ) | |
| OPERATIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................................. 2
II.     APPLICABILITY ..................................................................................................... 2
III.    DEFINITIONS........................................................................................................... 3
IV.     CIVIL PENALTY ..................................................................................................... 5
V.      COMPLIANCE REQUIREMENTS .......................................................................... 6
VI.     REPORTING REQUIREMENTS ............................................................................. 9
VII.    STIPULATED PENALTIES .................................................................................... 11
VIII.   FORCE MAJEURE ................................................................................................. 15
IX.     DISPUTE RESOLUTION ....................................................................................... 17
X.      INFORMATION COLLECTION AND RETENTION ............................................. 20
XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................. 22
XII.    COSTS .................................................................................................................... 23
XIII.   NOTICES................................................................................................................ 24
XIV.    EFFECTIVE DATE................................................................................................. 25
XV.     RETENTION OF JURISDICTION .......................................................................... 25
XVI.    MODIFICATION .................................................................................................... 25
XVII.   TERMINATION ..................................................................................................... 26
XVIII.  PUBLIC PARTICIPATION ..................................................................................... 26
XIX.    SIGNATORIES/SERVICE...................................................................................... 27
XX.     INTEGRATION ...................................................................................................... 27
XXI.    FINAL JUDGMENT ............................................................................................... 28

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendants Harley-Davidson, Inc., Harley-Davidson Motor Company Group, LLC, Harley-Davidson Motor Company, Inc., and Harley-Davidson Motor Company Operations, Inc. ("Defendants") violated Section 203, subparagraphs (a)(1), (a)(3)(A), and (a)(3)(B) of the Clean Air Act ("Act"), 42 U.S.C. § 7522(a)(1), (a)(3)(A), (a)(3)(B), and the EPA regulations promulgated thereunder that are applicable to on-highway motorcycles, 40 C.F.R. Parts 85 and 86.

WHEREAS, the Complaint alleges that, beginning in 2008, Defendants manufactured, sold, offered to sell, installed, or caused any of the forgoing with respect to 14,968 Screamin' Eagle electronic fuel injection Race Tuners (Part No. 32107-01L) and at least 324,424 Screamin' Eagle Pro Super Tuners (Part No. 32109-08, 08A, 08B, and 08C) (hereafter, collectively, "Subject Tuners"), which bypass, defeat, or render inoperative the electronic control unit's ("ECU") certified design or the original fuel and timing map calibrations that control emissions, in violation of Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B).

WHEREAS, the Complaint also alleges that Defendants caused tampering by causing persons to install the Subject Tuners, which had the effect of removing or rendering inoperative devices or elements of design installed on or in certified on-highway motorcycles in violation of Section 203(a)(3)(A) of the Act, 42 U.S.C. § 7522(a)(3)(A).

WHEREAS, the Complaint further alleges that Defendants introduced into United States commerce 12,682 on-highway motorcycles that were not covered by a certificate of conformity, in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1).

1

WHEREAS, Defendants do not admit the facts alleged in the Complaint or any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 203 of the Act, 42 U.S.C. § 7522, and over the Parties.  Venue lies in this District pursuant to Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 and 7524, because the Administrator of EPA has her principle place of business here. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consent to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 203, 204 and 205 of the Act, 42 U.S.C. § 7522(a)(1) and (3)(B), and §§ 7523 and 7524.

## II.      APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendants and any of their successors, assigns, or other entities or persons

2

otherwise bound by law.  The Parties agree that, for purposes of this Consent Decree, Harley-Davidson dealers are independent and are not Defendants' agents, contractors, or entities controlled by Defendants.

4.    Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

5.    In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

6.    Defendants' obligations to comply with the requirements of this Consent Decree are joint and several.  In the event of the insolvency of any Defendant or the failure by any Defendant to implement any requirement of this Consent Decree, the remaining Defendants shall complete all such requirements.

### III.    DEFINITIONS

7.    Unless specifically defined in this Section or elsewhere in this Consent Decree, terms used in this Consent Decree shall have the meanings currently set forth in Sections 202, 216 and 302 of the Act, 42 U.S.C. §§ 7521, 7550, and 7602, and the regulations promulgated under Title II of the Act, 42 U.S.C. §§ 7521-7590.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Act" means the Clean Air Act, as amended, 42 U.S.C. §§ 7401 *et seq.*;

3

b.   "Certificate of Conformity" means a certificate issued by EPA, pursuant to Section 206 of the Act, 42 U.S.C. § 7525(a)(1), 40 C.F.R. §§ 86.406-78(c)(1) and 86.437-78(a)(1) and (2)(ii-iii).

c.   "Complaint" means the complaint filed by the United States in this action;

d.   "Consent Decree" or "Decree" means this Decree;

e.   "Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

f.   "Defendants" means Harley-Davidson, Inc., and the following entities (each of which does business as Harley-Davidson Motor Company):  Harley-Davidson, Inc.'s subsidiary, Harley-Davidson Motor Company Group, LLC; and Harley-Davidson Motor Company Group, LLC's subsidiaries, Harley-Davidson Motor Company, Inc. and Harley-Davidson Motor Company Operations, Inc.;

g.   "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

h.   "Effective Date" has the definition provided in Section XIV;

i.   "Paragraph" means a portion of this Decree identified by an Arabic numeral;

j.   "Parties" means the United States and Defendants;

k.   "Section" means a portion of this Decree identified by a Roman numeral;

l.   "Subject Tuners" means the tuners referenced in the second "Whereas" clause of this Decree.

4

m.     "Tuning Product" means Subject Tuners and similar aftermarket devices, including modules and chips; and

n.     "United States" means the United States of America, acting on behalf of EPA. When used in the geographical sense, the term "United States" shall include the states and territories of the United States.

IV.     CIVIL PENALTY

8.     Within 30 Days after the Effective Date, Defendants shall pay the sum of $12.0 million as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9.     Defendants shall pay the civil penalty due at https://www.pay.gov to the U.S. Department of Justice ("DOJ") account, in accordance with instructions provided to Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Columbia after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

Stephen W. Boettinger
Assistant General Counsel
Harley-Davidson Motor Company
3700 West Juneau Ave.
Milwaukee, WI  53208

5

on behalf of Defendants.  Defendants may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States in accordance with Section XIII (Notices).

At the time of payment, Defendants shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to the United States via email or regular mail in accordance with Section XIII.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Harley-Davidson, Inc., et al.,* and shall reference the civil action number, CDCS Number and DOJ No. 90-5-2-1-11333.

10.     Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating their federal income taxes.

## V.     COMPLIANCE REQUIREMENTS

11.     General Certification Compliance Requirement.  As to any motorcycles that are sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported into the United States, Defendants shall comply with Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), and the on-highway motorcycle regulations, 40 C.F.R. §§ 86.406-78(c)(1), 86.437-78(a)(1) and (2)(ii-iii), by obtaining a valid EPA issued-certificate of conformity before selling, offering for sale, importing, or introducing or delivering for introduction into commerce a new motorcycle.

12.     Cease Sale of Uncertified Tuning Products.  No later than August 23, 2016, Defendants shall cease the manufacture, sale, offer for sale, and/or distribution for use in the

6

United States of any Tuning Product, and the import of any Tuning Product for sale or distribution for use in the United States, unless it is covered by an Executive Order issued by the California Air Resources Board ("ARB") or is otherwise approved by EPA.

13.    Buyback and Destruction of Subject Tuners.  On or about September 1, 2016, and again on or about November 1, 2016, Defendants shall offer Harley-Davidson dealers a buyback of any Subject Tuner that has been supplied by Defendants to any Harley-Davidson dealers, that is not covered by a California ARB Executive Order, and that has not yet been sold to the ultimate purchaser.

    a.    Defendants shall offer to buy back at no cost to such dealers each such Subject Tuner.  The buyback offer shall include, at a minimum, Defendants' full sales price to the dealer, and all shipping and handling costs.

    b.    For each Subject Tuner that Defendants acquire from the buyback, Defendants shall destroy by crushing such Subject Tuner and its calibrated maps. Defendants shall destroy any Subject Tuner that they acquire from the buyback within 30 Days of the Effective Date or within 30 Days of receipt of such Subject Tuner, whichever is later.

14.    Denial of Warranty.

    a.    Defendants shall deny all warranty claims for functional defects of powertrain components for any Harley-Davidson vehicle (Model Year 2017 or later) registered in the United States, if any Defendants have any information to show that such vehicle was tuned using a Tuning Product that was not covered by a California ARB Executive Order or otherwise

7

approved by EPA.

b.   Defendants shall instruct Harley-Davidson dealers to deny such warranty

claims where any Defendant or any Harley-Davidson dealer has any such

information.

c.   No later than December 31, 2016, Defendants shall ensure that their

warranty policies and product literature state that Defendants will deny

warranty claims for functional defects of powertrain components for any

Harley-Davidson vehicle, Model Year 2017 or later, that was tuned using

a Tuning Product that was not covered by a California ARB Executive

Order, or otherwise approved by EPA.

15.   <u>Uncertified Tuning Products Sold or Distributed Outside the United States</u>

a.   No later than December 31, 2016, Defendants shall ensure that the

following statement appears (1) on the exterior retail packaging of any

Tuning Product sold or distributed by Defendants outside the United

States that is not covered by a California ARB Executive Order or is not

otherwise approved by EPA; and (2) on any Harley-Davidson product

literature or catalog advertising such Tuning Product: "Not Authorized

For Use In, Or Export To, The United States or its Territories."

b.   Defendants shall provide notice to the United States no less than seven (7)

Days prior to the sale or distribution by Defendants, for use in Canada or

Mexico, of any Tuning Product that is not covered by a California ARB

Executive Order or is not otherwise approved by EPA. The notice shall

8

state the quantity of such Tuning Products to be sold or distributed, and the recipient(s) of the Tuning Products.

16.     Annual Emissions Testing.  Beginning with Model Year 2018, Defendants shall conduct annual tailpipe emissions tests, in the first quarter of each calendar year, on a motorcycle modified with a Harley-Davidson certified kit (aftermarket parts and tuner) that is covered by the California ARB Executive Order.  The tested motorcycles must be equipped with the certified kit that reflects the largest number of sales for the prior calendar year, tuned to reflect the "worst case tailpipe emissions levels" for such kit (*i.e.*, the ECU calibrations that will result in the highest level of tailpipe emissions from the modified motorcycle).  The annual tailpipe emission testing shall duplicate the testing conducted for the California ARB, but without any mileage accumulation beyond that required to run the actual test itself.

VI.     REPORTING REQUIREMENTS

17.     By July 31st and January 31st of each year, beginning after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVII, Defendants shall submit to the EPA a semi-annual report for the preceding reporting period of January 1 through June 30, or July 1 through December 31, as applicable (except as to the first report, which may include a shorter period of time) that shall include:

a.     a certification that, for the preceding reporting period (other than, as applicable, prior to August 23, 2016), it sold in the United States only Tuning Products that were covered by a California ARB Executive Order or were otherwise approved by EPA, as required by Paragraph 12;

b.     a copy of each Executive Order application for a Tuning Product made

9

during the reporting period (including all supporting documentation and test data

submitted to the California ARB with such application, or otherwise referenced therein

but not submitted), and identification of any Executive Orders issued for a Tuning

Product during the reporting period;

       c.      a statement of the number of Tuning Products, if any, that were not

covered by a California ARB Executive Order that, during the preceding reporting period

(other than, as applicable, prior to August 23, 2016), Defendant exported to, sold in, or

distributed for use in Canada and/or Mexico and the recipient(s) of the Tuning Products;

       d.      the status of the compliance requirements set forth in Paragraph 13

(Buyback and Destruction of Subject Tuners) and Paragraph 14 (Denial of Warranty),

*e.g.*, the number of warranties that Harley-Davidson has denied, or that Harley-Davidson

is aware that Harley-Davidson dealers have denied;

       e.      a description and the results of the annual emissions tests required by

Paragraph 16;

       f.      any problems encountered or anticipated in implementing the Consent

Decree, together with implemented or proposed solutions;

       g.      a description of any non-compliance with the requirements of this Consent

Decree and an explanation of the violation's likely cause and of the remedial steps taken,

or to be taken, to prevent or minimize such violation. If the cause of a violation cannot

be fully explained at the time the report is due, Defendants shall so state in the report.

Defendants shall investigate the cause of the violation and shall then submit an

amendment to the report, including a full explanation of the cause of the violation, within

10

30 Days of the Day Defendants become aware of the cause of the violation. Nothing in this Paragraph relieves Defendants of their obligation to provide the notice required by Section VIII (Force Majeure).

18.     All reports shall be submitted to the persons designated in Section XIII (Notices).

19.     Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

20.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

21.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

22.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.    STIPULATED PENALTIES

23.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force

Majeure) or reduced or waived under Paragraph 31.  A violation includes failing to perform any obligation required by the terms of this Decree according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

24.     Late Payment of Civil Penalty.  If Defendants fail to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $3000 per Day for each Day that the payment is late.

25.     Sale of Uncertified Tuning Products.  Defendants shall pay a stipulated penalty of $5000 for each Tuning Product they manufacture, sell, offer to sell, distribute, or import in violation of the requirements of Paragraph 12.

26.     Compliance Milestones.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified below in this Paragraph:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1500 | 1st through 14th Day |
| $2000 | 15th through 30th Day |
| $3000 | 31st Day and beyond |

a.    For the failure to offer to buy back each Subject Tuner or the failure to buy back any Subject Tuner offered or provided by any dealer, as required by subparagraph 13.a;

b.    For the failure to destroy each Subject Tuner as required by subparagraph 13.b;

c.    For the failure to comply with the requirements set forth in Paragraph 15, concerning labeling and product statements for uncertified tuning products sold or distributed outside the United States, and the notice requirements for uncertified Tuning Products sold or distributed in Canada or Mexico; and

d.    For the failure to conduct the annual emissions tests as required by Paragraph 16.

12

27.     Warranty Requirements.  A stipulated penalty of $2000 shall apply for the failure

to comply with the requirements set forth in Paragraph 14, concerning denial of warranty.

28.     Reporting and Notice Requirements.  A stipulated penalty of $1000/1500/2000,

shall accrue per violation per Day for each violation of the reporting requirements of Section VI

for Days 1-14/15-30/31 and beyond, as applicable.

29.     Stipulated penalties under this Section shall begin to accrue on the Day after

performance is due or on the Day a violation occurs, whichever is applicable, and shall continue

to accrue until performance is satisfactorily completed or until the violation ceases.  However,

stipulated penalties will not accrue with respect to judicial review by this Court of any dispute

under Section IX (Dispute Resolution), during the period, if any, beginning on the 31st Day after

the Court's receipt of the final submission regarding the dispute until the date that the Court

issues a final decision regarding such dispute.  Stipulated penalties shall accrue simultaneously

for separate violations of this Consent Decree.

30.     Defendants shall pay any stipulated penalty within 30 Days of receiving the

United States' written demand, unless Defendants invoke the Dispute Resolution procedures

under Section IX during the 30-Day period.

31.     The United States may in the unreviewable exercise of its discretion, reduce or

waive stipulated penalties otherwise due it under this Consent Decree.

32.     Stipulated penalties shall continue to accrue as provided in Paragraph 29, during

any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of

EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined

13

to be owing, together with interest, to the United States within 30 Days of the effective

date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in

whole or in part, Defendants shall pay all accrued penalties determined by the Court to be

owing, together with interest, within 60 Days of receiving the Court's decision or order,

except as provided in subparagraph c, below.

c.     If any Party appeals the District Court's decision, Defendants shall pay all

accrued penalties determined by the reviewing court to be owing, together with interest,

within 15 Days of receiving the final appellate court decision.

33.     Defendants shall pay stipulated penalties owing to the United States in the manner

set forth and with the confirmation notices required by Paragraph 9, except that the transmittal

letter shall state that the payment is for stipulated penalties and shall state for which violation(s)

the penalties are being paid.

34.     If Defendants fail to pay stipulated penalties according to the terms of this

Consent Decree, they shall be liable for interest on such penalties, as provided for in 28 U.S.C.

§ 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be

construed to limit the United States from seeking any remedy otherwise provided by law for

Defendants' failure to pay any stipulated penalties.

35.     The payment of penalties and interest, if any, shall not alter in any way

Defendants' obligation to complete the performance of the requirements of this Consent Decree.

36.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States'

exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XI

14

(Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

VIII.   FORCE MAJEURE

37.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, which delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

38.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by email to EPA, within 5 business days of when they first knew that the event might cause a delay. Within 7 Days thereafter, Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a

15

schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; their rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in their opinion, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

39.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

40.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

41.     If Defendants elect to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), they shall do so no later than 15 Days after receipt of EPA's notice.  In any such proceeding, Defendants shall have the burden of demonstrating by a

preponderance of the evidence that the delay or anticipated delay has been or will be caused by a

force majeure event, that the duration of the delay or the extension sought was or will be

warranted under the circumstances, that best efforts were exercised to avoid and mitigate the

effects of the delay, and that they complied with the requirements of Paragraphs 37 and 38. If

Defendants carry this burden, the delay at issue shall be deemed not to be a violation by

Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

IX.   DISPUTE RESOLUTION

42.     Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree.  Defendants' failure to seek resolution of a dispute

under this Section shall preclude them from raising any such issue as a defense to an action by

the United States to enforce any obligation of Defendants arising under this Decree.

43.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under

this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

considered to have arisen when Defendants send the United States a written Notice of Dispute.

Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal

negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is

modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations,

then the position advanced by the United States shall be considered binding unless, within 30

Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute

resolution procedures as set forth below.

44. <u>Formal Dispute Resolution</u>. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

45. The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

46. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 20 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

47. The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

48.   <u>Standard of Review</u>

a.   <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 46 that is accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

b.   <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 46, Defendants shall bear the burden of proving that their actions were in compliance with this Consent Decree; or, if the dispute concerns the interpretation of this Consent Decree, Defendants shall bear the burden of demonstrating that their interpretation is consistent with the language of the Consent Decree.

49.   The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Any stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 32.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

X.    INFORMATION COLLECTION AND RETENTION

50.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any of Defendants' facilities covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

       a.    monitor the progress of activities required under this Consent Decree;

       b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

       c.    obtain documentary evidence, including photographs and similar data relating to Defendants' compliance with this Consent Decree; and

       d.    assess Defendants' compliance with this Consent Decree.

51.    Until three years after the termination of this Consent Decree, Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, relating to Defendants' performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any non-privileged documents, records, or other information required to be maintained under this Paragraph.

52.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of

20

any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants.  However, no documents, records, or other information that is required to be created or generated by this Consent Decree shall be withheld on grounds of privilege.

53.     Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seeks to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

54.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

55.   This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint through the date of lodging.

56.   The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly provided in Paragraph 55.

57.   Upon the Effective Date, the Parties agree that the tolling agreement in effect for this matter (first executed as of September 19, 2011, and extended thereafter) shall be void *ab initio* except for Tolled Claims concerning the violations alleged in the complaint filed in this matter.

58.   In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 55.

59.   This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations,

22

and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits; except that, for any action against Defendants based on Section 203(a)(3) of the Act, 42 U.S.C. § 7522(a)(3), concerning any Tuning Product, Defendants are not precluded from raising as a defense the fact that any such Tuning Product has received an Executive Order from CARB; and except as otherwise set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.

60.     This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

61.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.   COSTS

62.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XIII.   NOTICES

63.    Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

| | |
|---|---|
| As to the United States: | DOJ and EPA |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DOJ # 90-5-2-1-11333 |
| As to DOJ by email: | eescdcopy.enrd@usdoj.gov<br>Re: DOJ # 90-5-2-1-11333 |
| As to EPA by mail: | Jocelyn L. Adair, Attorney<br>U. S. Environmental Protection Agency<br>Air Enforcement Division (2242A)<br>1200 Pennsylvania Avenue, NW<br>Washington, D.C. 20460<br>(202) 564-1011 |
| As to EPA by email: | Adair.Jocelyn@epa.gov |
| | As to Defendants:<br>Stephen W. Boettinger<br>Assistant General Counsel<br>Harley-Davidson Motor Company<br>3700 West Juneau Ave.<br>Milwaukee, WI  53208 |

64.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

24

65.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.   EFFECTIVE DATE

66.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.    RETENTION OF JURISDICTION

67.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX (Dispute Resolution) and XVI (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVI.   MODIFICATION

68.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

69.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 48, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.  TERMINATION

70.     After Defendants have completed the requirements of Paragraphs 12 (Cease Sale of Uncertified Tuning Products) and 13 (Buyback and Destruction of Subject Tuners); have maintained satisfactory compliance with the requirements of this Consent Decree for a period of four years from the Effective Date; and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

71.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties will submit, for the Court's approval, a joint stipulation terminating the Decree.

72.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section IX.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XVIII. PUBLIC PARTICIPATION

73.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent

Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XIX.   SIGNATORIES/SERVICE

74.     Each undersigned representative of Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

75.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX.   INTEGRATION

76.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations,

agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

### XXI.   FINAL JUDGMENT

77.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

Dated and entered this 14th day of September, 2017. 20

_____
EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

July 19, 2017

Date

LARRY STARFIELD
Acting Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

SUSAN SHINKMAN
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

PHILLIP A. BROOKS
Director Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code 2242A
Washington, D.C. 20406

JOCELYN L. ADAIR
Attorney
Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W., MC 2242A
Washington, D.C. 2

30

FOR HARLEY-DAVIDSON, INC., *et al.*

July 12, 2017

Date: _____

JOHN A. OLIN
Senior Vice President and Chief Financial Officer
Harley-Davidson, Inc.
3700 West Juneau Ave.
Milwaukee, WI 53208

31